Case 1:07-cv-07254 Document 1 Filed 12/27/2007 Page 1 of 11

DAJ

FILED
DECEMBER 27, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 7254**

| | | |
|---|---|---|
| KUMON NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No._____ **JUDGE NORGLE** |
| | ) | **MAGISTRATE JUDGE SCHENKIER** |
| STEPS TO SUCCESS, INC. | ) | |
| and PALI SHAH, | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

Plaintiff Kumon North America, Inc., by its attorneys, and as and for its Complaint against defendants Steps to Success, Inc. and Pali Shah, states as follows:

# PARTIES

1. Plaintiff Kumon North America, Inc. ("Kumon") is a Delaware corporation, with its principal place of business in Teaneck, New Jersey.

2. Defendant Steps to Success, Inc. is an Illinois corporation, with its principal place of business in Hoffman Estates, Illinois.

3. Defendant Pali Shah is a citizen and resident of the State of Illinois, and the president and sole shareholder of defendant Steps to Success, Inc.

[1]

## JURIDICTION AND VENUE

4. The Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(1), in that all defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## RELEVANT BACKGROUND FACTS

6. Kumon is the franchisor of Kumon Math & Reading Centers. Kumon Math & Reading Centers offer after-school learning programs designed to help children master the basics of math and reading. The Kumon method was started over 50 years ago in Japan by Toru Kumon. The unique instructional method he developed was premised on the belief that every child possesses untapped abilities and the potential to excel. The Kumon method has proved so successful that today there are Kumon Math & Reading Centers in 43 countries, including more than 1,400 Kumon centers in North America alone.

7. Kumon grants qualified persons a limited license to operate Kumon Math & Reading Centers at specific approved locations pursuant to written franchise agreements. The franchise granted to franchisees includes a license to use Kumon's proprietary names and marks (the "Kumon Marks"), including its federally-registered trade and service marks, certain forms, tests, books and charts, and curriculum worksheets (the "Kumon Materials"), and Kumon's know-how and proprietary information (the "Kumon Know-How") (collectively, the "Kumon Method").

8.   Defendant Steps to Success, Inc. ("STS") is a Kumon franchisee. Effective September 1, 2006, STS and Kumon entered into a written Kumon Center Franchise Agreement (the "Franchise Agreement"), pursuant to which Kumon granted STS a franchise to operate a Kumon Math & Reading Center in the Huntington Shopping Center in Hoffman Estates, Illinois for a five (5) year term.

9.   Defendant Pali Shah, in her capacity as its president, executed the Franchise Agreement on STS's behalf. Shah also executed a written guaranty of STS's obligations under the Franchise Agreement.

10.   Under the terms of the Franchise Agreement, STS agreed, among other things, to operate its franchised Kumon Center in strict compliance with the Kumon Method. This included compliance with all of the standards, procedures and policies set forth in the Franchise Agreement itself and in Kumon's operations manuals.

11.   STS's obligations under the Franchise Agreement included the duty to submit to Kumon certain monthly reports, including student enrollment reports. Monthly enrollment reports are essential because the monthly royalty payment to be made by STS under the Franchise Agreement is based in part on student enrollment figures.

12.   STS also agreed under the Franchise Agreement to keep at its Kumon center "all records relating to each student enrolled at [the Center] for a period of two (2) years from the student's last day of attending the Center," and to allow Kumon to visit its Center and to "inspect any materials, products or documents relating to the operations of" the Center. The Kumon operations manual, which is incorporated by reference into and made a part of the Franchise Agreement, requires that the student enrollment records include the student's address and telephone number. This information is critical because it facilitates Kumon's express right to

contact students or parents of students currently or formerly enrolled at the Center for quality control and other purposes. In addition, § 7.5 of the Franchise Agreement provides that all student lists and enrollment records belong to Kumon, not to STS.

13. On October 4, 2007, Kumon visited STS's Kumon Math & Reading Center for the purpose of inspecting STS's student enrollment record books. STS refused to allow Kumon to inspect and copy the student record books.

14. By written notice dated the following day, October 5, 2007, Kumon informed defendants that STS's refusal to permit Kumon's inspection and copying of the student record books constituted a violation of § 6.13 of the Franchise Agreement, and that STS's failure to supply Kumon with complete and accurate student enrollment information violated § 6.1 of the agreement. The October 5 notice afforded STS thirty (30) days within which to cure its defaults by affording Kumon access to inspect and copy all student record books at the Center, and providing Kumon with full and complete student enrollment information for each student enrolled at the Center. The notice stated that the failure to allow the inspection and to provide the student information sought would result in termination of the Franchise Agreement.

15. After substantial resistance from and protracted delay by defendants, Kumon was finally afforded access to STS's student enrollment records on October 26, 2007. The inspection was conducted that day and was coordinated and supervised by Ron Conran, Kumon's Branch Manager for its Chicago area office.

16. The student enrollment records reviewed by Kumon demonstrated that STS had materially and significantly underreported, failed to report and misrepresented, student enrollment at STS's franchised Kumon Math & Reading Center. Even after defendants had hindered Kumon's inspection and had ample opportunity to adjust the records at their Kumon

Center, Kumon's inspection revealed no fewer than 35 students whose records contained an incorrect commencement date for study. In addition, notwithstanding Kumon's request that they do so, defendants failed to produce the study records for approximately 50 students.

17.    The effect of STS's underreporting of student enrollment information was the underpayment by STS of monthly royalties due and owing under the agreement in an amount in excess of $5430.00.

18.    Even more importantly, the analysis of defendants' underreporting established that defendants' misconduct was intentional. The student record books maintained at defendants' Kumon Center, when compared with the reports that defendants had tendered to Kumon, show that defendants reported to Kumon a different (and later) commencement date than that reflected on their own internal records that were not disclosed or reported to Kumon. The pervasive and repeated misstatement of student commencement dates on the reports tendered to Kumon establishes that defendants' misconduct was intentional. The effect of the misstatement of student commencement dates was to understate the monthly royalties due and owing by STS to Kumon.

19.    Based on its inspection of STS's student enrollment records, the determination that STS had underreported student enrollment and underpaid royalties owed, and that STS's underreporting of student enrollment information was intentional, Kumon determined to exercise its express right under the Franchise Agreement to terminate the agreement for cause. Although Kumon was entitled under § 15.1 of the Franchise Agreement to terminate "immediately upon notice" based on the underreporting, failure to report, or misrepresentation of student enrollment information, Kumon elected to afford STS through January 31, 2008 to cease operation of her former franchise Kumon Center, solely to avoid disruption to the studies of the students of STS's

former Center and to enable STS to wind down and conclude its business in an orderly manner. To encourage students to continue their studies at other franchisees' centers, Kumon provided at its own expense vouchers worth a month's tuition to former students of STS's center for use if such students choose to enroll at another Kumon Math & Reading Center in an area proximate to defendants' former Center.

20. Despite the express terms of the Franchise Agreement authorizing termination in the event of underreporting, failure to report, or misrepresentation of student enrollment, and the fact of STS's intentional underreporting, STS has stated that it will refuse to comply with the proper termination of the Franchise Agreement and that it "will continue to operate the location" despite termination of the Franchise agreement and STS's license to use the Kumon Method, including the Kumon Marks, and its post-termination obligations under the Franchise Agreement.

21. STS's post-termination obligations under the Franchise Agreement include, without limitation, the obligations to pay all amounts due and owing to Kumon, to discontinue any and all use of the Kumon Method, including the Kumon Marks, to return to Kumon its operations manuals and other Kumon Materials, and to de-identify the location of its former Kumon Center.

22. In addition, STS agreed that, for a one (1) year period following termination of the Franchise Agreement, it would not own, operate, be employed by, provide financing or other assistance or facilities to, or have any interest in, any competitive business located within twenty (20) miles of its former Kumon Center or any other Kumon Center. Under the express terms of her written guaranty of the Franchise Agreement, Shah expressly guaranteed STS's performance

of its obligations, including its post-termination obligations, and she express assumed and agreed to be personally bound by, the post-termination covenant not to compete.

23. STS's and Shah's expressed intent to "continue to operate the location" makes clear that STS intends to violate its contractual post-termination obligations, including its covenant not to compete, and that Shah intends to breach her guaranty and personal covenant not to compete.

## COUNT I
## DECLARATORY JUDGMENT

24. Kumon repeats and realleges ¶¶ 1 through 23 of its Complaint, as and for this ¶ 24, as if fully set forth herein.

25. An actual and justiciable controversy exists between the parties concerning Kumon's termination of the Franchise Agreement and defendants' obligations to comply with their post-termination obligations and covenants as set forth in the Franchise Agreement and in Shah's guaranty.

26. Pursuant to 28 U.S.C. § 2201, *et seq.*, the Court may declare the rights and other legal relations of the parties, including the propriety of the termination of the Franchise Agreement based on STS's intentional underreporting of student enrollments and corresponding failure to pay amounts owed to Kumon, STS's obligation to perform its post-termination obligations under the Franchise Agreement, including its covenant not to compete, and Shah's personal liability under her guaranty for STS's breaches and under her personal assumption of the covenant not to compete.

**WHEREFORE**, Kumon respectfully requests the Court enter judgment in its favor and against defendants STS and Shah declaring that:

    A.    Kumon properly terminated the Franchise Agreement in accordance with its terms and all applicable law;

    B.    Termination of the Franchise Agreement shall become effective on January 31, 2008, without further notice;

    C.    Upon termination of the Franchise Agreement effective January 31, 2008, STS is obligated to perform each and every one of its post-termination obligations under the Franchise Agreement, including its covenant not to compete;

    D.    Pending termination of the Franchise Agreement effective January 31, 2008, STS is obligated to comply with all of its obligations under the Franchise Agreement; and

    E.    Under the terms of her guaranty, Shah is personally liable for STS's breaches of the Franchise Agreement, and personally bound by the terms of the post-termination covenant not to compete set forth in the Franchise Agreement,

together with an award of its costs and expenses incurred in connection with this action, including attorneys' fees, as provided for under the terms of the parties' Franchise Agreement.

## COUNT II
## FURTHER RELIEF

27. Kumon repeats and realleges ¶¶ 1 through 23 of its Complaint, as and for this ¶ 27, as if fully set forth herein.

28. Consistent with 28 U.S.C. § 2202, the Court may grant Kumon further necessary or proper relief, after reasonable notice and hearing, against STS and Shah based on the declaratory judgment sought in Count I of Kumon's Complaint.

29. Consistent with such declaratory judgment, Kumon seeks preliminary and permanent injunctive relief ordering defendants to comply with their post-termination obligations under STS's Franchise Agreement and Shah's guaranty, including their covenants not to compete.

**WHEREFORE**, Kumon respectfully requests the Court enter judgment in its favor and against defendants preliminarily and permanently enjoining them to comply with their post-termination obligations under the Franchise Agreement, including their covenants not to compete, together with an award of its costs and expenses incurred in connection with this action, including attorneys' fees, as provided for under the terms of the parties' Franchise Agreement.

**COUNT III**
**BREACH OF CONTRACT**

30. Kumon repeats and realleges ¶¶ 1 through 23 of its Complaint, as and for this ¶ 30, as if fully set forth herein.

31. Under the Franchise Agreement, Kumon was entitled to receive payment of a monthly royalty based on student enrollment at STS's Kumon Center.

32. By reason of STS's breach of the Franchise Agreement, Kumon has been damaged in an amount, to be determined at trial, equal to the net present value of the monthly royalties it would have received from STS but for STS's breaches of the Franchise Agreement and its resulting termination.

**WHEREFORE**, Kumon demands judgment in its favor and against STS in an amount, to be determined at trial, equal to the net present value of all lost future royalties, together with an award of its costs and expenses incurred in connection with this action, including attorneys' fees, as provided for under the terms of the parties' Franchise Agreement.

**COUNT IV**
**BREACH OF GUARANTY**

33. Kumon repeats and realleges ¶¶ 1 through 23 of its Complaint, as and for this ¶ 33, as if fully set forth herein.

34. Shah personally guaranteed each and every one of STS's obligations under the Franchise Agreement and is personally liable for the breach thereof.

35. Under her guaranty, Shah is liable to Kumon for the damages it has sustained by reason of STS's breaches of the Franchise Agreement and its resulting termination.

**WHEREFORE**, Kumon demands judgment in its favor and against Shah in an amount, to be determined at trial, equal to the net present value of all lost future royalties, together with an award of its costs and expenses incurred in connection with this action, including attorneys' fees, as provided for under the terms of the parties' Franchise Agreement.

## COUNT V
## MISREPRESENTATION

36. Kumon repeats and realleges ¶¶ 1 through 23 of its Complaint, as and for this ¶ 36, as if fully set forth herein.

37. STS and Shah had a duty to accurately and honestly report to Kumon with regard to students enrolled at STS's Kumon Math & Reading Center. This duty included the duty to accurately report student commencement dates and to pay monthly royalties commensurate with actual student enrollment.

38. STS and Shah willfully and intentionally misrepresented to Kumon student commencement dates. The purpose of STS's and Shah's willful and intentional misrepresentation of student commencement dates was to understate the monthly royalties due and owing by STS to Kumon.

39. Kumon reasonably relied on the student enrollment reports provided to it by STS and Shah, including student commencement dates, in determining the royalties due and owing by STS to Kumon.

40.     The student enrollment information supplied by STS and Shah to Kumon was false, in that it repeatedly misrepresented student commencement dates and thereby understated the royalties due and owing by STS to Kumon.

41.     STS paid to Kumon the understated royalties indicated by the false student enrollment reports provided by STS and Shah and, in reliance on the truth and accuracy of the reports provided by STS and Shah to Kumon, Kumon accepted the monthly royalty payments made by STS believing them to be appropriate and in the correct amount.

42.     In fact, but unbeknownst to Kumon by reason of the false student enrollment reports supplied to Kumon by STS and Shah, the amounts paid by STS in monthly royalties was less than the amounts due and owing to Kumon.

**WHEREFORE**, Kumon respectfully requests judgment in its favor and against defendants, jointly and severally, for actual damages in an amount to be proven at trial, and punitive damages in an amount sufficient to deter in the future fraudulent conduct of the nature perpetrated by defendants, together with an award of costs and expenses incurred by Kumon in connection with this action, including attorneys' fees, as provided for under the terms of the parties' Franchise Agreement.

Dated:  December 27, 2008

                                          **KUMON NORTH AMERICA, INC.**

                                      By:     s/ Fredric A. Cohen
                                                  One of its Attorneys

Fredric A. Cohen (ARDC No. 6198606)
Andrew P. Bleiman (ARDC No. 6255640)
**CHENG COHEN LLC**
1101 W. Fulton Market, Suite 200
Chicago, Illinois 60607
P (312) 243-1701
F (312) 277-3961